**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
<u>MCALLEN DIVISION</u>**

| | |
|---|---|
| FRANCISCO DE LUNA and ELIZABETH DIAZ,<br>individually and on behalf of all others similarly situated,<br><br>              Plaintiffs,<br><br>v.<br><br>HIDALGO COUNTY, TEXAS; GUADALUPE TREVINO, in his official capacity as Hidalgo County Sheriff; MARY ALICE PALACIOS, GILBERTO SAENZ, JESUS MORALES, BOBBY CONTRERAS, ROSA E. TREVINO, LUIS GARZA, ISMAEL OCHOA, CHARLIE ESPINOZA, E. "SPEEDY" JACKSON, in their official capacities as Hidalgo County Magistrates and Justices of the Peace,<br><br>              Defendants. | CIVIL ACTION NO. 7:10-CV-00268 |

<u>**PLAINTIFFS' OPPOSED MOTION AND MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AND BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**</u>

Pursuant to Federal Rule of Civil Procedure 56, Plaintiffs Francisco De Luna and Elizabeth Diaz and all similarly situated individuals file this Motion and Memorandum of Law in Support of their Motion For Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment, and as grounds state the following:

### SUMMARY OF ARGUMENT

Plaintiffs Francisco De Luna and Elizabeth Diaz ("Plaintiffs") are entitled to summary judgment on the question of whether Defendants' custom of jailing individuals for non-payment of fines without providing an indigency hearing constitutes a violation

of the Due Process and Equal Protection Clauses of the United States Constitution.  It is undisputed that the Plaintiffs are indigent, and it is undisputed that Hidalgo County never, at any point when Diaz and De Luna were juveniles or adults, did an indigency determination prior to incarcerating both for non-payment of fines associated with truancy.  It is undisputed that the County made no effort to determine whether or not the failure to pay by either client was willful.  Indeed, the only substantive dispute is whether the Defendants are required by law to affirmatively offer individuals an indigency hearing before incarcerating them for non-payment of fines.  Because the conversion of fines into jail time without a determination of indigency or an inquiry into whether or not the failure to pay is willful is unconstitutional, Plaintiffs are entitled to summary judgment.

Defendants' motion for summary judgment should be denied because it is predicated on a mistaken interpretation of applicable law.  Specifically, Defendants erroneously assert that Plaintiffs themselves are responsible for their incarceration for non-payment of fines because they did not assert their indigency at the point of arraignment. Dkt. 74, (Def.'s Opp'd  Motion for Summ. J. hereinafter "Def. Br." ¶ 20). Defendants conflate both statutory and constitutional requirements with this assertion.

Texas Code of Criminal Procedure § 45.046 states that a "judge may order [a] defendant confined in jail until [a defaulted judgment has been] discharged by law if the judge at a hearing makes a written determination that: (1) the defendant is not indigent and has failed to make a good faith effort to discharge the fine and costs; or (2) the defendant is indigent and: (A) has failed to make a good faith effort to discharge the fines and costs under Article 45.049; and (B) could have discharged the fines and costs under

2

Article 45.049 without experiencing any undue hardship." See TEX. CODE CRIM.
PRO. ANN. art. 45.046 (2009), Attached as Ex. 1.

This statute and its legislative history are consistent with the Supreme Court's
governing holdings in *Tate* and *Bearden*, which make it clear that automatic
imprisonment for defaulting on court-ordered fines is unconstitutional economic
discrimination, *Tate v. Short*, 401 U.S. 395, 398 (1971), and that thus, fairness requires a
hearing or a determination regarding indigency and a defendant's willful failure to pay
prior to incarceration for non-payment. *Bearden v. Georgia*, 461 U.S. 660, 668-69
(1983). Subsequent to *Tate*, Texas Legislature revised a number of statutes, including
TEX. CODE CRIM. PRO. ANN. art. 45.03 and 45.046. *See e.g., Ex parte Stephens*, 468
S.W.2d 813 (Tex. App. Ct. 1971); *Ex parte Tate*, 445 S.W.2d 210 (Tex. Crim. App.
1969); *see also Ex parte Scott*, 471 S.W.2d 54, 55 (Tex. Crim. App. 1971). These
legislative revisions implement the Supreme Court's holding in *Tate* by providing for
'alternative means,' such as installment payments of fines and costs for defendants who
cannot afford to pay the fine in full. *Id.* The revision of Article 43.03 includes the same
language on the same subject, outside of Justice and Municipal courts. *See* TEX. CODE
CRIM. PRO. ANN. § 43.03 (2009); *see also Ex parte Stephens*, 468 S.W.2d 813 (Tex.
App. Ct. 1971).

The defendants' reliance on *Garcia v. City of Abilene*, 890 F.2d 773 (5th Cir. 1989),
and its progeny is misplaced for two reasons. First, unlike the defendant in *Garcia*, the
Plaintiffs here asserted their indigency. Second, even if the Plaintiffs had not asserted
their indigency, *Garcia* is inapplicable because applies only narrowly to extreme
examples of individuals who fail to appear in court at any time that would allow the court

an opportunity to conduct an indigency determination and assess alternate means of discharging fines. *Garcia* does not impose a requirement that criminal defendants that do appear at relevant court hearings give up their constitutional rights if they unwittingly miss whatever fleeting opportunity might exist during the course of that appearance to raise them.

Because there is no material issue of disputed fact and the law supports Plaintiffs' position, Plaintiff' motion for summary judgment should be granted and Defendants' motion for summary judgment should be denied.

## I.       STANDARD OF LAW

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also*, *e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir. 1991). Cross motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require that the court determine whether either of the parties deserves judgment as a matter of law on the facts that are not disputed. *Joplin v. Bias*, 631 F.2d 1235, 1237 (5th Cir. 1980); *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir.1996).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record "which [the moving party] believes demonstrates the absence of a genuine issue of material fact" with respect to issues on which the moving party bears the burden of proof at trial. *See Celotex*, 477 U.S. 323; *Martinez v. Schlumber, Ltd.,* 338 F.3d 407, 411 (5th Cir. 2003); *P. Borgades-Account B, L.P. v. Air Products, L.P.*, 369 F.Supp.2d 860, 864 (E.D. Tex.

2004).  The moving party meets its initial burden by showing that the "evidence in the record would not permit the nonmovant to carry its burden of proof at trial." *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998). While a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party[,]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), the moving party need not negate the elements of the nonmovant's case. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

Once a moving party has met its burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, [rather] the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(c).  The adverse party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan Worldwide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir.1998).

All inferences must be drawn and reasonable doubts resolved in favor of the adverse party. *Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49 n. 5 (1990)(citing *Anderson*, 477 U.S. at 255).  Evidentiary disputes must be construed in favor of the adverse party, but "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts[,]" *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir.1999).

If an adverse party completely fails to make a showing sufficient to establish an essential element of that party's case on which it will bear the burden of proof at trial, then all other facts are rendered immaterial and the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322-23.

## II.    STATEMENT OF FACTS

Plaintiffs filed this action on behalf of themselves and others similarly situated on July 26, 2010 seeking, among other things, declaratory and injunctive relief to stop Defendant Hidalgo County's practice of jailing Class C misdemeanants under CCP 45.046 immediately for their alleged non-payment of fines without conducting indigency determinations.  See Dkt. 1, ¶ 10, Complaint.

### 1.  Overview of Defendant Hidalgo County's Practices

Defendant Hidalgo County does not dispute Plaintiffs' assertion that it routinely jails individuals for non-payment of fines without conducting indigency determinations.  *See* Ex.2, (Spreadsheet); Ex. 4 (Def. Supplemental Answer to Interrogatory No. 2). Although Texas Code of Criminal Procedure § 45.046 requires a judge to make a written determination of indigency prior to incarceration for non-payment of fines, it is undisputed that Defendants have no affirmative procedures in place to ensure compliance with the statute.  Indeed, Defendant Hidalgo County asserts that its courts cannot inquire into a defendant's reasons for not paying.  *See* Ex. 4 (Supp. Int). ("Even assuming an individual who is fined is too poor to pay, if he does not appear and assert his indigency, the ***court cannot inquire*** into his reasons for not paying and offer alternatives.").   These undisputed facts are consistent with Hidalgo County's position that the burden to assert indigency is on the individual.

Accordingly, Hidalgo County does not conduct indigency determinations when children are assessed fines for school misconduct as minors.  Leal Dep., 40:6-13.  And indigency determinations are rarely, if ever, conducted when individuals arrested at the age of 17 for outstanding school fines are magistrated or arraigned.  Leal Dep., 54:1-13.

In fact, it is undisputed that indigency determinations rarely, if ever, occur for any individual being arraigned.  *See* Ex. 3, (Deposition of Bertha Garza "Garza Dep.", 39:16-24).  These practices affect thousands.  Ex. 24 ("Justice of the Peace Fine List").  Indeed, the number of individuals in Hidalgo County subject to the truancy court that generates the majority of the fines at issue in this case is by itself in the thousands.  *See* Ex. 5; Leal Dep., 64:21.

According to the Defendants, the number of indigency determinations conducted or required is entirely dependent on the number individuals who assert their indigency after they are arrested and taken to jail.  *See* Ex. 4 (Def. Supp. Int. Resp.).  Also according to the Defendants, an individual's appearance before a judge is a mere formality.  *See* Garza Dep., 44:24-45:23.  In other words, such appearances do not serve as a forum through which a judge makes meaningful substantive assessments, such as indigency determinations.  Indeed, prior to an arraignment for failure to pay fines, without reference to any judicial hearings or assessments, and even prior to a judge's signature on the Class C Commitment Order, Defendants calculate the time the indigent individual must spend in jail to pay off those fines at the rate of $100 per day.  Garza Dep. 43:13-15;44:15-45:19;72:20-21.  There is no attempt to ascertain indigency, appoint counsel, or assign alternative sentences. *See* Garza Dep. 39:16-41:20.

Defendants' practices have a particularly pronounced effect on young adult residents of Hidalgo County.  It is undisputed that the County has a practice of issuing Notices of Continuing Obligations to Appear ("NCOA") to individuals who accrued truancy tickets while minors and who continue to have fines in the court records when they turn 17.  Dkt. 74, ¶ 6; Ex. 7 (Defendants' Response to Requests for Admission).

The NCOAs are sent to the address on file with the court, although those addresses may no longer be valid. Leal Dep. 128:8-22. If an individual fails to appear, a warrant in the form of a capias pro fine is issued. The number of individuals caught up in this process is daunting. In fact, over 7,000 Class warrants were issued from Mary Alice Palacios's court alone an 18-month period. Ex. 8 (Activity Report for Justice Courts – Hidalgo County Precinct 4, Place 2). Once warrants are issued, if individuals appear in the truancy court for another ticket or are arrested on another charge, they are then told to pay the outstanding fines or committed to jail to discharge them. Trevino Dep. 22:8-15. When individuals are booked into jail, they fill out a number of forms, including a form regarding the appointment of counsel for indigent inmates. Garza Dep. 54:1-20. Magistration or arraignment is held at the Hidalgo County Jail within 24-48 hours of arrest. Trevino Dep. 52:3-7. Generally, there are no indigency determinations of any kind during the arraignment. Garza Dep. 57:15-17.

## 2. Application of the Defendants' Practices to Francisco De Luna and Elizabeth Diaz.

Elizabeth Diaz ("Elizabeth") and Francisco De Luna ("Francisco") are young adults who were jailed by Hidalgo County pursuant to the practices described above for the non-payment of school-related conduct and truancy fines despite being indigent and unable to pay. As set forth in detail below, Plaintiffs were automatically incarcerated without being given a hearing or judicial consideration of these issues by Hidalgo County.

As juveniles, both individual Plaintiffs missed school or were issued school conduct-related fines and were required to attend hearings in which they ostensibly pled

8

guilty to missing school.  Ex. 11 ("Waivers").  Fines were assessed against both Plaintiffs for missing school, triggering Plaintiffs' parents' obligation to pay the fines, but the Plaintiffs were warned only of possible juvenile court consequences as a result of pleading guilty to the charges being brought against them for the school conduct.  Ex. 11 ("Waivers").  Plaintiffs were never told that unresolved fines in their juvenile records would automatically trigger Notices to Continue to Appear ("NCOA") upon Plaintiffs' turning 17, or that failure to appear in court could result in arrest regardless of whether or not it was received notice to appear was received.  Ex. 29 (NCOA).  Hidalgo County did not issue proper judgment and sentence for the fines once Elizabeth and Francisco reached 17 years old.  Ex. 11 (Waivers).  There was no hearing assessing repayment of the "Failure to Attend School" fines to Elizabeth and Francisco, and neither Plaintiff was provided notice of his or her obligation to the court or possible arrest.  The warrants that were issued for failing to comply with the NCOA converted the non-payment of fines into an automatically jailable offense as warrants issued for nonappearance, regardless of whether the NCOA notification had been received. See Leal Dep p. 128:14-22; Trevino Dep. 24:10-14.

### Francisco De Luna

Beginning on April 7, 2005 and ending in 2007, Francisco De Luna was issued a number of school-related tickets for misbehavior ranging for conduct such as disruption of class, failure to comply with directives, abusive language in school, and failure to attend school.  *See* Exhibit 12 (Francisco's School Tickets).  All of his tickets were transferred to juvenile court.  *See* Ex. 13 (Orders of Justice Court Transferring Cases to Juvenile Court).  In all, Francisco received 24 tickets through December 2007 and they

were all transferred to juvenile court. Exs. 12; 13. The juvenile court opened a case in November 2007 and ordered Francisco to be on probation. *See* Ex. 15 (Aff. of E. De Luna). Francisco's mother never heard from the juvenile court again and Francisco continued to go to school through November of 2008 so that his probation would expire. They believed it had. Ex. 15 (Aff. of E. De Luna).

Even though his cases had been transferred to juvenile court and resolved through probation, the court of Justice of the Peace Mary Alice Palacios, Precinct 4, Place 2, issued a "birthday letter" or a Notice of Continuing Obligation to Appear after Francisco De Luna turned 17 on December 17, 2008. Ex. 29 (NCOA). Francisco never received the letter. Ex. 10, (Transcript of De Luna Arraignment). He did not appear and warrants for his arrest were issued for each of the school-related fines the court believed was outstanding. Ex. 6, (Leal Dep 90:21-25-91:1-15). Prior to issuing the capias pro fines, which are arrest warrants, Mary Alice Palacios's court made no attempt to determine whether or not Francisco's case had been resolved by the juvenile court. Leal Dep. 91:1-15. Furthermore, there is no record of any attempt – outside of one Notice of Continuing Obligation to Appear sent shortly after his 17th birthday -- to reach Francisco to inquire into his ability to pay, his willingness to pay, or the resolution of his juvenile court case.

Over two years later, on January 11, 2010, Francisco was arrested for public intoxication and taken to the Hidalgo County Jail. Def. Br. 74, ¶ 7. His mother, Elsa De Luna, spoke to jail officials shortly after he was arrested and was told that she needed approximately a small amount of money to bail him out of jail. See Ex. 15 (E. De Luna Aff.), ¶ 5. After his mother gathered the money to bail him out of jail for public intoxication, she called back and learned that she needed over $10,000 for "county

charges." Ex. 15 (E. De Luna Aff.) at ¶ 6.  Elsa De Luna thought that Francisco's school

case had been resolved by the juvenile court and so informed the jail.  Ms. De Luna was

instructed to contact the issuing court of Mary Alice Palacios to try to arrange a payment

plan or some other arrangement to allow Francisco to be released from jail.  Ex. 15, (De

Luna Aff.) ¶  6.  However, Palacios's court would not permit staggered payment or

service in exchange for jail time.  Ex. 15, ¶ 6.

Francisco asserted his indigency by requesting a lawyer and answering "no" to the

question of whether or not he could afford an attorney on the "Hidalgo County Sheriff's

Department Question[naire] Regarding Attorney Information."  See Ex. 16 (Sheriff's

Department Indigency Forms).  The indigency questionnaires are filled out as part of the

booking process.  Trevino Dep. 47:22-48:6; Garza Dep. 39:22-24.  This form was

completed by a Hidalgo County Sheriff's Department employee with the badge number

3949.  Ex. 16.

After booking, Francisco spent the evening in jail and was brought to arraignment

or magistration the next morning, where he was informed that there were twenty-four

warrants open on him for school-related violations, all fine-only, non-jailable offenses.

Ex. 10 (De Luna Transcript).

The video[1]  of Francisco's arraignment began with Justice of the Peace Rosa

Trevino reciting the general rights of all of the individuals who were being arraigned at

the jail that morning.  Ex. 17 (Video of Arraignments).  The rights specified were, among

others, the right to hire an attorney; the right to have an attorney present prior to and

during any interview and questioning by peace officers or attorneys representing the

---

[1] Arraignments that take place at the jail are generally done via videoconference so that judge does not have
to go to the jail.  See Trevino Dep. 53:18-54:13.

state; and the right to remain silent.  Ex. 17; *See also* Ex. 10 (Transcript of De Luna Arraignment).

Judge Trevino's recitation of rights was followed by a number of arraignments where every single individual pleads guilty and no one was represented by an attorney. Exs. 17, 10.  In fact, the transcript demonstrates that Francisco's entire transaction with Judge Trevino lasted only a few minutes and mostly entailed her recital of fines that had already been assessed against Francisco by Mary Alice Palacios's court.  Exs. 10, 17. She then proceeded to sign 25 separate orders committing Mr. De Luna to jail for 101 days, the time necessary to "lay out" his fines at $100 per day.  *See* Ex. 18 (Class C Commitment Orders).  The Sheriff's Department calculated the amount of time that Francisco had to serve.  Garza Dep. 42:7-9.

It is undisputed that Judge Trevino made no attempt to determine whether or not Mr. De Luna could afford to pay the fines before committing him, nor did she offer him any alternatives to immediate commitment.  Ex. 10 (Transcript of De Luna Hearing). There was no inquiry into whether or not Francisco's failure to pay was willful.  Exs. 10, 17.  During the 18 days that he was incarcerated, Francisco suffered anxiety and fear. See De Luna Dep., 20:11-25; Ex. 23 (Expert Report and Disclosure of Thorne hereinafter "Expert Report").

### Elizabeth Diaz

It is not disputed that Elizabeth Diaz is indigent.  Dkt. 74, Ex. L.  She was issued 3 school tickets beginning in November 2006 for failure to attend school.  See Ex. 20 (Diaz Truancy Court Records).  Throughout 2008, Elizabeth and her mother were ordered to appear at Precinct 4, Place 2 before Judge Mary Alice Palacios, but the judge

rescheduled or court was cancelled.  She was never given notice that she had to keep her address updated with the court.  On January 27, 2009 a Notice of Continuing Obligation to Appear was issued ordering Elizabeth to appear in court.  Ex. 29.  Elizabeth did not receive it because the address the court had for her was incorrect.  Ex. 27.   In December 2009, IRRA – the charter school Elizabeth was attending --  issued a school ticket to Elizabeth for failure to attend. See Ex. 20 (Diaz Truancy Records).  Elizabeth Diaz and her mother, Adelita Hernandez, appeared at municipal court on February 25, 2010 in response to the truancy summons related to the ticket from IRRA; Elizabeth was informed that she owed $1,603 in outstanding fines based on earlier charges on school-related, fine-only misdemeanors.  Ex. 21, (A. Hernandez Aff.).  Elizabeth saw Judge Palacios regarding the new ticket.  Def. Br., Ex. L. (Aff. of M. Cherry).

It is not disputed that Elizabeth did not see Judge Palacios regarding the school-related charges for which warrants had been issued.  Def. Br. 74, Ex. L.  Nor is it disputed that Marcella Cherry (the court coordinator Elizabeth interacted with on February 25, 2010) did not want the responsibility of a "red-flagged warrant" individual being let free.  Def. Br., Ex. L.  As a result, Marcella Cherry or other court personnel alerted the Sheriff's department that Elizabeth had outstanding warrants and Elizabeth was taken to jail.  Def. Br., Ex. L.  Although Ms. Diaz and her mother informed court officials that they could not afford to pay the fines, and inquired about community service options, Ms. Diaz was nonetheless immediately taken to Hidalgo County Jail from the courthouse when her warrants for fines were discovered.  Def. Br., Ex. L.

After Elizabeth arrived at jail, she was arraigned and Justice of the Peace Bobby Contreras subsequently signed three orders committing her to jail to "lay out" the unpaid

fines, without making any attempt to determine whether Ms. Diaz could afford to pay the fines or offering her any alternatives to immediate commitment.  Ex. 18 (Commitment Orders); Ex. 22 (Transcript of Diaz Arraignment).

In addition to being involuntarily un-enrolled from her charter school while incarcerated in February 2010 (Diaz Dep, 288:4-7), Elizabeth Diaz suffered emotional harm from her incarceration in Hidalgo County jail in February 2010.  See Ex. 23, (Expert Report).  While incarcerated in the Hidalgo County jail in February 2010, she was "physically and verbally abused" by her cell mates.  Ex. 28 (Diaz Dep. excerpt); *see also* Diaz Dep. 183: 7-9.  The physical abuse she suffered was sexual in nature.  Ex. 23 (Expert Report).  She continues to suffer depression and PTSD as a result of her incarceration in February 2010.  Ex. 23 (Expert Report); Diaz Dep. 251:18-15-252:1.

### 3. *The Role of the Sheriff's Department in Jailing Indigent Individuals Generally and Plaintiffs Specifically*

Guadalupe Trevino is the Sheriff of Hidalgo County.  He oversees the Hidalgo County Jail and is in charge of everything that occurs at the jail, including "[p]olicy creation, the execution, and implementation."  Trevino Dep. 31:10-14.  He has held this position for 7 years.  Trevino Dep. 8:20-21.  Some individuals, like the plaintiffs and those listed in Exhibit 2, accused of the non-payment of fines and other Class C misdemeanors are committed to his jail.

There is a presumption in Hidalgo County that if an individual is physically in the Hidalgo County Jail, the individual is already convicted. Trevino Dep., p. 65:12-19.  The County practice is to commit to jail, the individual identified on an executed capias pro fine issued from a Justice of the Peace.  *See* Trevino Dep, 21-22.  The Class C

14

Commitment Orders are also considered arrest warrants.  *See* Trevino Dep. p. 63:21-24.

They are different from capias pro fines because the Sheriff's Department considers an

individual convicted once one of these has been issued.  Trevino Dep. 64:1-4.  As a

result, when a Class C Commitment Order is entered, the Sheriff's department jails the

individual until he or she satisfies the fine or costs with the money or jail time…at $100

per day.  Trevino Dep. 64:17-18.  They will arrest an individual for the non-payment of

when a capias pro fine is issued.  Trevino Dep.  63:21-24.

### 4.  *The Hidalgo County Arraignment Process*

Magistration, or arraignment, is uniform in Hidalgo County.  See Ex. 7 (Def.

Response to Requests for Production).  Arraignment is handled by seven of the nine

magistrates who rotate through handling all of the arraignments or magistrations per

week for a week at a time.  Leal Dep. 54:1-13.  When conducting magistration or

arraignment, Justices of the Peace rarely make indigency determinations. *See* Garza Dep.

39:16-24.

The fact that indigency determinations are rarely conducted is something that the

County is aware of.  Ex.  7 (Def.  Response to Requests for Admissions).  For a three

year period, the defendants could not produce 50 written indigency determinations.  See

Def. Br., Ex. M.  Instead, they produced 72 jail files – attached as Exhibit M to the

Defendant's Brief – only 41 of which contain determinations of indigency.  *Id*.  The

County's policy with respect to jailing indigent individuals for the non-payment of fines

is that it will jail an "indigent adult defendant charged with a Class C Misdemeanor, who

has pled guilty, has been assessed a fine and has subsequently failed to pay the fine, . . .

immediately.  If the defendant cannot pay the fine upon subsequent arrest and thereafter

15

fails to raise the issue of his or her indigence as required by the case law construing

indigency incarceration in Texas as set out in *Garcia v. City of Abilene* and *Sorrells v.*

*Warner*, a magistrate, consistent with Code of Criminal Procedure § 45.046, can commit

that defendant to jail. . .".  Ex. 7 (Def. Response to Request for Admissions).

### III.    The Plaintiffs' Motion for Summary Judgment Should Be Granted

Because The Defendants' Practice of Jailing Indigent Defendants for

Non-Payment of Fines without Indigency Determinations Violates the

Equal Protection Clause and the Due Process Clause.

The facts described above show that Hidalgo County's practice of jailing individuals

without an indigency determination is generally unconstitutional, and unconstitutional as

applied to the Named Plaintiffs.  All the plaintiffs need to prove to prevail on a § 1983

claim against the municipality, is: (1) that the conduct complained of was committed by a

person acting under the color of state law; and (2) the conduct deprived a person of

rights, privileges, or immunities secured by the Constitution or laws of the United States.

To establish municipal liability under § 1983 the Plaintiffs need to demonstrate that

the "deprivation of a right protected by the Constitution or federal law is caused by an

official policy."  *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

There are essentially five avenues for establishing local government liability under §

1983.  A plaintiff may assert liability based on: (1) an illegal official governmental policy

or decision; (2) an illegal custom or practice within the government; (3) a custom or

policy of inadequate training, supervision, discipline, screening, or hiring; (4) illegal

conduct of an official with final policymaking authority; or (5) a municipality's

<u>ratification of illegal acts</u>.  See *Lopez v. City of Houston*, 2005 WL 1770938 (S.D.Tex. July 25, 2005) (Emphasis Added) citing *Monell v. Dep't of Social Servs. of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  As detailed below, the Plaintiffs have proven municipal liability for the County's unconstitutional practice of jailing individuals for non-payment of fines without the benefit of indigency determinations.

## 1. The County's Practice was Under of Color of Law for *Monell* Purposes.

The conduct Plaintiffs complain of is "under color of law" because the Plaintiffs can demonstrate the existence of a "custom" of the municipality which caused the constitutional violation at issue. *Monell v. Dep't of Social Servs. of City of New York*, 463 U.S. 658, 694 (1978).  In determining the appropriateness of claims against municipalities, "[t]he Court in *Monell* held that local governments may be the targets of a § 1983 action where official policy or governmental *custom* is responsible for a deprivation of rights protected by the constitution… ."  *Bennet v. City of Slidell*, 728 F.2d 762, 766 (5th Cir. 1984) (Emphasis Added).

The "plaintiff[s] must show that there was either an official policy *or an unofficial custom*, adopted by the municipality, that was the moving force behind the claimed constitutional violation." *Duvall v. Dallas C'ty, Tx.*, 631 F.3d 203, 209 (5th Cir. 2011) (Emphasis Added); *see also Bennet*, 728 F.2d at 767 (finding "the Supreme Court to require that the offending policy (including policy embodied in custom) be the policy or custom of the city government…if that city is to be subject to liability as an actor under § 1983).

Here, the Defendants' practice of jailing indigent individuals for their inability to pay outstanding fines without conducting indigency determinations falls into the category of "custom" or "practice" that warrants municipal liability because it is persistent and widespread among all of the Justice and Municipal Courts.  See Ex. 2 (Spreadsheet). Courts define "custom" as "evidence of a persistent widespread practice of government officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents government policy." *Arshad v. Congemi*, No. 08-30061, 2009 WL 585633 at *8 (5th Cir. Mar. 9, 2009) (citing *Burge v. st. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003)); s*ee also Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984).

With this definition in mind, if the Defendants only incarcerated individuals for the non-payment of fines from one municipal or justice court, there would be little evidence that the illegal practice the Plaintiffs complain of is a custom or policy.  Ex. 2; Ex. 24.  However, it is undisputed that individuals are incarcerated for the non-payment of fines that originate throughout Hidalgo County's justice and municipal courts and that arraignment is uniform.  Exs. 2, 7.  Therefore, the practice of jailing individuals for the non-payment of fines without an indigency determination is a Hidalgo County custom.

In order to render a  municipality liable "[a]ctual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority." *Webster,* 735 F.2d  at 841; see *also Bennet*, 728 F.2d at 768 (finding that "the persistent conduct must be attributable to the source of policy or law of the city, its governing body.").  Again, the Defendants had both actual and constructive knowledge of the widespread practice of the

justice and municipal court custom of jailing individuals for the non-payment of fines without conducting indigency determinations.

The Justice of the Peace courts, at least one of which heard 500 truancy cases per day, were engaged in issuing warrants that were questioned by the County's most senior lawyer over five years ago.  *See* Leal Dep. 130:12-15; pp. 138-140.   The County was actually aware that fines were converting to warrants because a parent complained about his treatment in the justice court of Mary Alice Palacios and as a result, the District Attorney sent a letter to the County Commissioners in or around 2000.  *See* Leal Dep. pp. 135-139.  The district attorney's complaints involved the court's jurisdiction, the clerks' exercise of judicial discretion, and salaries.  Leal Dep. pp. 135-9.

The parent contacted the County District Attorney when his daughter was "detained" on school grounds by a school law enforcement officer.  Leal Dep. p. 135-9; *See also* Ex. 25 (complaint of Tony Castillo).  She was in the courtroom – presumably at the school – waiting for the judge so the judge could see her.  Leal Dep. p. 136   The parent attempted to remove her from the school courtroom, but the "court" officials were detaining her on a "warrant."   Leal Dep. p 137.  The parent contacted the District Attorney and the District Attorney addressed his issues with the validity of the truancy court with the [county] commissioners.  Leal Dep. p. 138.

Despite the fact that the District Attorney requested that the truancy courts stop issuing arrest, the County persisted and continued doing.  Leal Dep, 139:4-17.  To date, the practice continues. Ex. 4 (Defs' Supp. Interrog).

Furthermore, the County continues to ratify the practice by claiming that the conversion of fines to jail time is permissible if the defendant – at arraignment – does not

verbally assert indigency when a judge asks him if he understands the charges and fines

assessed.  See Ex. 4 (Def.'s Supp. Interrog); Ex. 7 (Def. Response to Requests for

Admissions).

This ratification, on the part of the county, is all that is required for municipal

liability to attach.  See *Lopez* (noting that liability may be based on "a municipality's

ratification of illegal acts).  Given the County's actual and constructive knowledge of the

practice, coupled with its ratification, municipal liability for *Monell* purposes has

attached.

**2.  The Plaintiffs have Established that the Custom of Hidalgo County Violates
Both the Due Process and the Equal Protection Clause of the Constitution.**

In addition to demonstrating that the County is a state actor for § 1983

purposes, the Plaintiffs are also entitled to prevail on their claim, and thus be entitled to

summary judgment, because Hidalgo County's custom of jailing individuals for non-

payment of fines without the benefit of a hearing on the issuance of the fines,

themselves, or on the ability or willingness to pay the fines violates both the Due

Process and the Equal Protection clause of the Constitution.  *Tate v. Short*, 401 U.S. 392

(1971), and its progeny lay a foundation for requiring the procedural protection of

indigent debtors facing imprisonment for unpaid fines.  *See Tate* at 398.  A fine cannot

be automatically converted to jail time without a hearing.  *Id*.  A deprivation of liberty

must be accompanied by notice and an opportunity for hearing "appropriate to the nature

of the case."  *See e.g. Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

Nothing permits a municipality to impose a fine as a sentence and automatically

convert it into a jail term. *See Tate* at 398 ("the Constitution prohibits the State from

imposing a fine as a sentence and then automatically converting it into a jail term solely

because the defendant is indigent and cannot forthwith pay the fine in full.").  Jailing an individual simply because he or she cannot afford to pay a fine amounts to discrimination based on economic status—a clear violation of Equal Protection because the poor, forced into jail, are punished much more severely than their wealthier counterparts who can pay their fines. *Id*. at 399  (finding that the "statutory ceiling cannot, consistently with the Equal Protection Clause, limit the punishment to payment of the fine if one is able to pay it, yet convert the fine into a prison term for an indigent defendant without the means to pay his fine.").

Texas addressed the Supreme Court's decision in *Tate* with strong legislative policy permitting municipal and justice courts to incarcerate individuals for fine-related offenses that occurred prior to their 17th birthday *only after* a written determination of indigency.  See Ex. 1 (45.046) (Emphasis Added).  The plain language of the statute requires that this be done by *a judge* prior to incarceration.  Ex. 1.  The defendants consistently argue that they are free to ignore this statute and its plain language if a defendant does not raise indigency.  Ex. 4 (Def. Supp. Interrog); Dkt. 74, (Def. Br.); Dkt 87 (Opposition to Motion for Class Cert.) (stating that "[t]he focus of the Plaintiffs' case has been upon the requirements of Texas Code of Criminal Procedure (TCCP) §45.046 . . . In order for the mandates of TCCP §45.046 to apply one must assert indigency in the context of the inability to pay.").  However, nothing in the language of § 45.046 suggests that an individual arrested pursuant to this statute must assert indigency prior to an indigency determination being conducted by a judge.  See Ex. 1.

*Bearden* reveals the manner in which '[d]ue process and equal protection principles converge' in cases relating to the treatment of criminal defendants where those

defendants are sentenced to monetary sanctions and fails to meet their financial

obligations." *Id.*   "[T]he nature of the individual interest affected by the determination to

jail a party for failure to pay a fine or restitution clearly supports the requirement of

sufficient legal process." *Id.*   The defendants do not dispute that they do not follow the

plain language of CCP § 45.046, which requires a written indigency determination prior

to incarceration. Ex. 7.  Rather, they argue that, despite the plain language of the text,

they are not required to do one unless the defendant raises the issue.  Ex. 7.  As a result,

Plaintiffs are entitled to judgment as a matter of law.


The County attempts to justify its process by claiming that juveniles plead guilty

to the crimes, such as failure to attend school, when they are originally assessed and they

are therefore accepting responsibility for the crimes.  However, their process fails to

recognize the difference between the consequence of a juvenile plea of guilty and the

assignment of adult penalties for that plea and that transfer from one to the other requires

a process.  *See Kent v. United States*, 383 U.S. 541, 557 (1966) (recognizing due process

required that juvenile was entitled to counsel and a hearing prior to transfer of his case

from juvenile to adult court where "the difference between five years' confinement and

the death sentence" were potentially at stake); *Barker v. Estelle*, 913 F.2d 1433, 1440 (9th

Cir. 1990) (affirming *Kent* and noting that it "held that due process requires that, before a

juvenile can be transferred to an adult court, the juvenile must be given a hearing,

effective assistance of counsel, access to records relied on by the court, and a statement

of reasons for the juvenile court decision.").  While *Kent* and cases discussing juvenile

transfer generally deal with the rights of juveniles who will be tried in an adult court

rather than youth court, the due process principles are applicable here because the defendants' rely upon the Plaintiffs' convictions as juveniles to justify jailing them as adults. *See* Ex. 11(Waivers); Ex. 7 (Def. Resp. to Requests for Admission). If they are to be jailed for fines that they admitted to as juveniles, the level of process they are due must be increased. *See Kent* at 557 (discussing difference in consequences between the two courts and holding that due process requires more protection for juveniles subjecting themselves to incarceration than those subject to juvenile courts).

Here, despite clear constitutional requirements, there is very little process afforded young adults who are jailed for outstanding truancy or school-related warrants. At no point, after the imposition of the fine upon the Plaintiffs and those like them, does the Hidalgo County court system automatically examine the Plaintiffs' ability to pay. Ex. 7 (Def. Resp. to Requests for Admissions). In the event that a capias pro fine is issued, there is no automatic inquiry into why payment was not made. Ex. 7 (Def. Resp. to Requests for Admissions). Despite the fact that CCP 45.046 provides a mechanism to prevent juveniles from being placed in jail for fines assessed against their parents, Hidalgo County converts responsibility for the fine from the adult to the child without ever ensuring that the child receives notice of the responsibility. Given that the failure to pay leads to immediate incarceration, Hidalgo County's practice violates the due process clause.

3. **The Plaintiffs Were Damaged by the County's Unconstitutional Practices**.

Both Plaintiffs were harmed as a result of having their constitutional rights violated. *Lewis v. Woods*, 848 F.2d 649, 651 (5th Cir.1988)( "[a] violation of constitutional rights is never *de minimis*, a phrase meaning so small or trifling that the

law takes no count of it."). By generally being incarcerated and deprived of their liberty as a result of the County's practice of jailing them for the non-payment of fines without the benefit of an indigency determination, both were harmed and are entitled to compensatory and nominal damages. With regard to compensatory damages, "'the basic purpose' of § 1983 damages is 'to compensate persons for injuries that are caused by the deprivation of constitutional rights.'" *Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 307 n. 9 (1986) (quoting *Carey v. Piphus*, 435 U.S. 247, 254 (1978).

In addition, while illegally held in the Hidalgo County jail for the non-payment of school-related truancy fines Elizabeth was sexually assaulted. Diaz Dep. pp. 162-165; Ex. 23 (Expert Report). As a result of the incarceration, the undisputed expert testimony is that Elizabeth continues to suffer emotional harm as a result of her incarceration in February 2010 and is now suffering from posttraumatic stress disorder (PTSD). See Ex. 23 (Expert Report). And the trauma she experienced by being detained has "*significantly* impacted her life and functioning." Ex. 23. (Expert Report). But for the County's practice of jailing individuals who are issued fines as juveniles without the benefit of indigency determinations, neither Elizabeth nor Francisco would have suffered the harm of incarceration or the resulting emotional harm resulting from the incarceration.

Because the undisputed facts support the Plaintiffs § 1983 allegations, that Hidalgo County justice and municipal courts engaged in a custom that was ratified by the County Commissioners and carried out by the Sheriff, and that custom is unconstitutional, the Plaintiffs' motion for summary judgment should be granted.

IV.     **The Defendants' Motion for Summary Judgment Should Be Denied**

        **Because It Is Not Supported By Evidence and Genuine Issues of Material**

        **Fact are Disputed.**

The defendants' motion for summary judgment should be denied for procedural and substantive reasons.  The defendants brief is procedurally deficient and should be denied because it is not supported by citations to the record and some of the evidence submitted is inadmissible or otherwise unreliable. FED. R. CIV. PRO. 56.  Unsupported allegations and conclusions without supporting evidence warrant dismissal of a motion for summary judgment.  *See generally Joplin v. Bias*, 631 F.2d 1235, 1237 (5th Cir. 1980).   Also, genuine issues of material fact are disputed and the defendants' position is unsupported by the law. As a result, summary judgment for the defendants should not be granted. FED. R. CIV. PRO. 56.

    **a.  The Defendants' Motion is Not Supported by Citations to the Record as**

        **Required by Rule 56 (c).**

None of the defendants' assertions of law or fact in Section II of their brief are supported by citations to the record.  See Def. Brief, Section II, pp 5-8.  This alone makes their motion subject to dismissal.  See *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir.1998)("The movant [for summary judgment] meets its initial burden by showing that the "*evidence in the record* would not permit the nonmovant to carry its burden of proof at trial.") (Emphasis Added).  The defendants' brief is only partially and incomprehensibly supported by citations to "particular parts of materials in the record, including depositions, documents, . . ." as required by the rule regarding summary judgment.  FED. R. CIV. PRO. 56(c)(1)(A).  Furthermore, in ruling on a summary

judgment motion, the trial court is only obliged to consider the material cited by a party in the motion paper.  See FED. R. CIV. PRO. 56 (c) (3) ("The court need consider only the cited materials, but may consider the other materials in the record.").  Despite attaching thousands of pages without directing the court to a particular page or document within their exhibits, the defendants cite documents and affidavits that are either inaccurate or do not actually support the positions stated in their motion.  Therefore, the defendants' motion for summary judgment should be dismissed as unsupported by the evidence in the following ways.

b. **Defendants' Brief Contains Unsupported Statements of Fact and Inaccurate Statements of Law**.

The defendants claim in their facts that "[i]t is undisputed that the Plaintiffs pled guilty to each and every offense, and the Plaintiffs' complaint further concedes that there is no evidence that Diaz or De Luna ever satisfied the underlying obligations, while they were juveniles, either through payment or via some other alternative sentencing, despite having been given the opportunity to do so."  There are no citations to the record to support this allegation and a number of the "facts" alleged in this statement are inaccurate.  First, the Plaintiffs' Complaint clearly articulates that De Luna thought that he was pleading guilty to a charge of public intoxication.  Dkt. 1, ¶ 100-101 ("Francisco plead guilty, understanding his plea to apply only to the PI charge.").  Second, there is evidence that De Luna satisfied his underlying obligations with the transfer of those obligations to juvenile court.  De Luna's mother understood his underlying obligations to be resolved through the juvenile court.  Ex. 15, (Aff. of E. De Luna), ¶ 3.  Third, it is

disputed that either client was given an opportunity to resolve their obligations that they did not take advantage of.  Ex. 15, (Aff. of E. De Luna), ¶ 3.

Next, the defendants claim that "the offenses remain unadjudicated, and, thus, lay dormant while Plaintiffs were juveniles."  Def. Br. at 6, ¶ 6.  There is no citation for this statement and it is an inaccurate statement of law and fact.  De Luna's case was adjudicated in the juvenile court.  *See* Ex. 14 (Palacios' First Motion for New Trial), pp. 39-40.  Mr. De Luna's juvenile record was an exhibit to the criminal trial of Judge Palacios and to her First Motion for a New Trial and demonstrates that the case was adjudicated there.  Ex. 14.

The defendants inaccurately assert that "Texas law requires that the judge presiding over unresolved cases such as these notify the former juveniles and newly classified adults of their continuing obligation to appear for offenses incurred as juveniles."  Def. Br., p. 6, ¶ 6.  This is a false statement.  The language of the relevant statute is Tex. Code of Criminal Procedure 45.060.  It states that "(a)…an individual may not be taken into secured custody for offenses alleged to have occurred before the individual's 17th birthday" and "(b) [o]n or after an individual's 17th birthday, if the court has used all available procedures under this chapter to secure the individual's appearance to answer allegations made before the individual's 17th birthday, the court **may** issue a notice of continuing obligation to appear by personal service or by mail to the last known address and residence of the individual. The notice must order the individual to appear at a designated time, place, and date to answer the allegations detailed in the notice."  The defendants' characterization of the judge's duty as mandatory is inaccurate and

misleading.  Furthermore, non-receipt of the notice is an affirmative defense to imprisonment. See  Ex. 1.

The Defendants cite an article from Texas Prosecutor magazine to support the position that the burden is on the criminal defendant to assert indigency when being incarcerated for non-payment of a fine-only offense.  Def. Br., Ex. N.   However, the article actually states that "Texas law is silent as to a judge's responsibility to inquire about a defendant's indigence," creating the presumption that the burden is on the criminal defendant to bring the issue to the courts' attention. Def. Br., Ex. N.

Finally, the defendants assert that De Luna waived his right to counsel and pled guilty to both public intoxication *and* the juvenile fine.  Def. Br. at 6 ¶ 7.  This is a mixed question of law and fact.  The Plaintiffs have never conceded that the mass arraignments conducted in Hidalgo County where all of the inmates to be arraigned are read a list of rights and asked if they understand them constitutes a valid, knowing waiver of rights.  Furthermore, the document entitled "Explanation and Waiver of Rights" De Luna and others signed as juveniles where he admitted guilt to the underlying school charges is not a document that can be used to allow a juvenile to waive his rights with regard to the alleged underlying charge turning into a fine and automatic jail time.  Ex. 11 (De Luna Waiver).  On that document, signed without the assistance of counsel, nowhere on the waiver was Francisco warned that he would responsible for the fines. Ex. 11 (Waiver).  Rather, his mother signed the form signed "enter[ing] an appearance for all purposes, including the assessment of fees and costs (In [*sic*] the case of a parent or legal guardian only)."  Ex. 11 (Waiver).  Francisco was warned that if he violated the court's order "a Contempt charge" could be filed in juvenile court.  Ex.11 (Waiver).  Therefore, the

defendants' assertion that Francisco pled guilty to the charges regarding the fines is inaccurate. Indeed, if the defendants are referring to Francisco's alleged waiver in the arraignment, the video evidence demonstrates that if was neither knowing nor voluntary and Texas courts have reversed convictions where there is no record to show that a defendant was adequately warned about the dangers and disadvantages of self-representation along with the failure to adequately inquire into defendant's capacity to voluntarily and intelligently waive his right to counsel. *Gesselin v. State*, 600 S.W.2d 309, 313-14 (Tx. Ct. Crim. App. 1980); *Monasco v. State* 2010 WL 4214765 *unreported* (Tx. Ct. Crim. App. 2010) citing *Blankenship v. State*, 673 S.W.2d 578, 583 (Tex. Ct. Crim. App.1984).

In the case of De Luna, had an inquiry into his ability to waive his rights been done, the court would have learned that he suffers from severe ADHD and struggled with learning issues in school. Ex. 30 (De Luna Educational Record).[2] This would bear upon his ability to knowingly and voluntarily waive his rights in the case of the alleged waiver of rights at the arraignment. *See* Ex. 17 (Video). When De Luna pleads, it is not clear whether or not Judge Trevino was asking about the fines, the public intoxication, or both. As a result, the defendants have not established that Francisco knowingly and voluntarily waived his rights and pled guilty as an undisputed fact.

### c. The Affidavit of Robert Leal is Not Based Upon Personal Knowledge.

Affidavits supporting motions for summary judgment must be based upon personal knowledge, set out facts that would be admissible, and show that that the affiant is competent to testify on the matter stated. *See* FED. R. CIV. PRO. 56 (c)(4). The

---

[2] De Luna's educational records demonstrate that he received special education services in school because his ADHD affected his ability to learn.

defendants attached an affidavit of Court Administrator Robert Leal which contains a number of statements regarding subjects about which Mr. Leal was deposed and about which he could not possibly have personal knowledge.  *See* Def. Br., Ex. 3 (Leal Aff.). Specifically, in his affidavit, Mr. Leal asserts that "[JP 4-2] compl[ies] with the law and statute [regarding the incarceration of the indigent] in everyway."  Def. Br., Ex. 3 at 2. This amounts to impermissible speculation regarding a legal fact that cannot be grounded in personal knowledge of the law because Mr. Leal only completed high school.  See Leal Dep. p. 12.  Mr. Leal's assertion that the truancy court in Hidalgo County complies with the law is a conclusion of law that he is not qualified to make as a lay person with no formal legal training.  See *L.E. Eguia v. Tompkins*, 756 F.2d 1130, 1136 (5th Cir. 1985) (failing to "condone the use of" . . .an affidavit where the affiant lacked knowledge of "at least one of [the] facts").  Courts have "long recognized that mere statements of conclusions of law or ultimate fact cannot shift the summary judgment burden to the nonmovant [for summary judgment]." *Galindo v. Precision American Corp.*, 754 F.2d 1212, (Tex. App. Ct. 1985) citing *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir.1978); *Benton-Volvo-Metairie, Inc. v. Volvo Southwest, Inc.*, 479 F.2d 135, 138-39 (5th Cir.1973) (nonmovant survives motion for summary judgment, without countering movant's showing, where movant's affidavit "set forth only ultimate facts or conclusions"); FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2738 (1983).

Finally, Leal's affidavit states that Elizabeth Diaz appeared "and Judge Palacios was present in chambers" and "she then indicated she could not pay the fine and needed more time" cannot be based upon personal knowledge.  Def. Br., Ex. B (Leal Aff.).  At his deposition taken on September 28, 2011, Mr. Leal stated that he was not in a position

to testify as to whether or not Elizabeth asserted her indigency when he was directly asked about it.  Leal Dep. 68:15-19.  His testimony was that "she dealt more with Marcella Cherry" and that Elizabeth "interacted with Marcella Cherry."  Leal Dep. 67:7-11. He states that he "showed up," but that he was checking in and not interacting with Elizabeth.  Leal Dep. 67:7-11.

### d.  There is a Genuine Issue of Material Fact Disputed by the Plaintiffs that Prevents the Entry of Summary Judgment in Favor of the Defendants.

The defendants' motion should be denied because there are material facts in their brief that are disputed.   Facts are "material" if they are "facts that might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  Here, as mentioned throughout, the Plaintiffs claims revolve around the County's incarceration of individuals in Hidalgo County for the non-payment of fines without any inquiry into why the fine was not paid or whether or not the individual is capable of paying it in violation of the Supreme Court's holdings that such inquiries are required to avoid equal protection and due process violations. *See, e.g., Tate*; *Bearden*. The application of these rulings in Texas CCP 45.046 is also at issue in this case.  The defendants' position is that despite these decisions and the Texas Code, a criminal defendant may be immediately incarcerated for non-payment of fines if he does not assert indigency.  The defendant also claim their practice is not widespread or endorsed, thus there is no municipal liability.  Not only are the defendants' facts disputed, the evidence supports the Plaintiffs' position.

### The Plaintiffs Asserted Their Indigency.

First, both Elizabeth and Francisco asserted indigency to Hidalgo County officials when they were questioned about their financial ability to afford a lawyer. Ex. 16. (Sheriff's Dept. Indigency Forms). An assertion of indigency is not required or contemplated by 45.046, but in the context of asking for a lawyer – stating you can not afford one, prompts an examination of your financial means in both law and fact.

Furthermore, it is undisputed that Elizabeth Diaz asserted her indigency to Marcella Cherry, court official that she appeared before, and that they took her word for it. *See* Def. Br., p. 7, ¶ 8 ("Judge Palacios's court took Ms. Diaz at her word that she was indigent."). The only indigency assertion that is disputed is Francisco's, but his jail records contain the documentation of his request for counsel and his assertion that he cannot afford counsel. Ex. 16. In addition, Francisco's mother called the issuing court to attempt to pay the fines in installments – indicating the family's inability to pay – but was not permitted to do anything less than pay the full amount. Ex. 15 (Aff. of E. De Luna).

The Plaintiffs' assertions of indigency completely undermine Defendants' legal claim. Hidalgo County's position is that it only does indigency determinations when an individual alerts the court to his or her indigency. Ex. 4. Both Plaintiffs did this, but it had no effect on the "pay or lay" system in effect in Hidalgo County. Because this issue is disputed and material, judgment cannot be entered in favor of the Defendants. FED. R. CIV. PRO. 56(c).

### e. The Defendants Do Not Have Evidence to Support Their Motion For Summary Judgment.

The defendants have offered no proof of the major factual assertions that support their motion for summary judgment. Their motion is based upon the assertion that a

"constitutionally-sound" (*sic*) policy is in place in Hidalgo County and that its JPs "take

the defendant at his or her word and provide alternative means to satisfy [a] fine" if a

defendant asserts indigency." Def. Br., p. 16. The defendants' other major argument is

supported by the unsupported allegation that the Plaintiffs did not assert their indigency.

Dkt. 74, p. 17. Both are unsupported by the evidence and disputed by the Plaintiffs.

Where a motion for summary judgment is filed by defendant and the parties submit

contradictory evidence, doubts are to be resolved in favor of the non-moving party. *See*

*Palmer v. BRG of Ga., Inc*., 498 U.S. 46, 49 n. 5 (1990) (citing *Anderson*, 477 U.S. at

255). The evidence is construed "in favor of the nonmoving party, however, only when

an actual controversy exists, that is, when both parties have submitted evidence of

contradictory facts[,]" *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th

Cir.1999), but only reasonable inferences will be drawn from the evidence in favor of the

nonmoving party. *Eastman Kodak Co. v. Image Tech, Servs., Inc.*, 504 U.S. 451, 469 n.

14 (1992). Where one party submits no evidence at all, the fact may be viewed as

undisputed in favor of the party that submitted evidence. Fed. R. Civ. Pro. 56 (e)(2) ("If a

party fails to properly support an assertion of fact . . . the court may consider the fact

undisputed for purposes of the motion."). Here, where the evidence of the Plaintiffs

contradicts the Defendants' major legal claim – that the Plaintiffs did not assert indigency

– summary judgment must be denied because the evidence must be construed in favor of

the non-moving party.

### c. The Defendants Are Not Entitled to Judgment as a Matter of Law.

The defendants' motion is premised upon the fact that *Garcia v. City of Abilene*, 890

F. 2d 773 (5th Cir. 1989), and the case that follows it, *Sorrells*, are applicable to this case.

In addition to the factual dispute described above, *Garcia* cannot be read to permit the immediate incarceration of individuals for non-payment of fines.  The facts of both *Garcia* and *Sorrells* are unique.  And the Texas Code of Criminal Procedure governing the issuance of capias pro fines (or warrants) for the arrest of individuals accused of crimes committed before the age of 17 does not invoke either case or the proposition that the defendant has an obligation to assert his or her indigency in order to benefit from this Constitutional protection. See Ex. 1, (CCP 45.046).

The current state of the constitutional law regarding indigency determinations requires that, prior to incarceration for non-payment of a fine, a judge determine whether or not: 1) the individual can pay; and 2) whether or not the individual has made an effort to pay.  *Bearden* at 662.  *Bearden v. Georgia* rearticulates the Equal Protection principle in *Tate* – that the inability to pay a fine cannot automatically be converted to imprisonment for indigent defendants, but extends the rights of indigents by requiring a *hearing* before revoking the probation of an indigent who is unable to pay his outstanding fines that will explore the reasons for non-payment and alternatives for satisfying debt. *See Bearden*, 461 U.S. 660, 662 (1983) (holding that the "the trial court erred in automatically revoking probation because petitioner could not pay his fine, without determining that petitioner had not made sufficient bona fide efforts to pay, and finding that alternative forms of punishment would be inadequate to meet the States penalogical interests.") (Emphasis Added).

Bearden and *Tate* are valid and controlling precedent in the Fifth Circuit.  *See Doe v. Angelina*, 733 F. Supp. 245, 253 (E.D. Tex. 1990).   Their prohibition against

precisely the system in place in Hidalgo County was followed the district court in by *Doe v. Angelina*, 733 F. Supp. 245, 253 (E.D. Tex. 1990).

The Defendants' reliance on *Garcia* and *Sorrells* is misplaced and their interpretation of both is inaccurate.  In *Garcia*, the petitioner had never been incarcerated, but she alleged that the City of Abilene "discriminated against her based on her economic status" even though she failed to ever go to court, make an appearance, or cooperate in any manner with the court making it impossible for the court to conduct an indigency determination prior to her incarceration.  *Id*. at 775.   She was never incarcerated, so there was no hearing. *Id.*   The Fifth Circuit affirmed the district court's failure to find a civil rights violation in this case however, the decision was based on the facts of the case and it never strayed away from the principles of *Tate* and *Bearden* regarding treatment of indigents.  *Id*. at 775-6.   Likewise, *Sorrells* is a fact-specific unpublished opinion, which, like *Garcia*, does not overrule *Tate* or *Bearden* and must be read in conjunction with them. The plaintiff's claim in *Sorrells* is focused on the constitutionality of the issuance of the capias pro fine and the defendant's subsequent arrest, given the fact that the police knew that he [Sorrells]was indigent.  The unpublished district court decision in *Sorrells* is not binding, but is nevertheless it is easily distinguishable because the Plaintiff class does not argue that they are entitled to an indigency determination *prior* to the issuance of a capias[3] – unlike *Sorrells* – the issue here is that once a defendant is arrested for non-payment of fines a judge is obligated, pursuant to 45.046, to determine if the defendant is indigent and/or whether or not the non-payment of the fine is willful.  *See* Ex. 1, CCP

---

[3] The Plaintiffs do not argue that an indigency determination at the time the fine is issued is an unconstitutional process.  Rather, if no indigency determination has ever been done, then an indigency determination must be done prior to incarceration.

45.046.  The scenario described in *Sorrells* is completely different from the one at hand and factually distinguishable.

The body of law in this area has evolved with two things remaining.  Prior to incarceration for non-payment of fine, there must be some indication that the non-payment was willful if the defendant is indigent.  The Texas Legislature has addressed this issue in Texas with CCP 45.046 and the plain language of the statute requires that written indigency determinations be made prior to incarceration for non-payment of fines.  45.046.   There is no indication that defendants must raise the issue with the court in order to benefit from the constitutional protections implicated.  See Ex. 1 (45.046).  Therefore, defendants' reliance on *Garcia* and its progeny is misplaced and their motion for summary judgment should be denied because they have violated the Constitutional rights of the Plaintiffs and the Plaintiff Class.

## CONCLUSION

For the reasons stated herein, the Plaintiffs respectfully request that the Court deny the Defendants Motion for Summary Judgment and grant the Plaintiffs' Motion for Summary Judgment.

Respectfully submitted this the 10th day of November by:


    /s/  Courtney A. Bowie
Courtney A. Bowie, Esq. (#1120127)
Miss. Bar No. 102528
Attorney-in-Charge
American Civil Liberties Union Foundation
Racial Justice Program
125 Broad St., 18th Floor
New York, NY 10004
cbowie@aclu.org
Phone: 212-549-2682
Fax: 212-549-2654


Dana B. Levy, Esq., Texas Bar No. 24031869
Michael Caddell, Esq., Texas Bar No. 03576700
Caddell & Chapman
1331 Lamar Street, suite 1070
Houston, Texas 77010

## CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2011, the foregoing document was served on all counsel of record by via the ECF filing system.


  /s Courtney Bowie
    Courtney A. Bowie

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### MCALLEN DIVISION

| | |
|---|---|
| FRANCISCO DE LUNA and ELIZABETH DIAZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HIDALGO COUNTY, TEXAS; GUADALUPE TREVINO, in his official capacity as Hidalgo County Sheriff; MARY ALICE PALACIOS, GILBERTO SAENZ, JESUS MORALES, BOBBY CONTRERAS, ROSA E. TREVINO, LUIS GARZA, ISMAEL OCHOA, CHARLIE ESPINOZA, E. "SPEEDY" JACKSON, in their official capacities as Hidalgo County Magistrates and Justices of the Peace,<br><br>Defendants. | CIVIL ACTION NO. 7:10-CV-00268 |

## ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

The Court has considered the parties' motion and hereby GRANTS the Plaintiffs' Motion for Summary Judgment and DENIES the Defendants' Motion for Summary Judgment.

SIGNED this the _____ day of _____, 2011.

_____
JUDGE RANDY CRANE
PRESIDING

APPENDIX – INDEX OF DOCUMENTS TO PLAINTIFFS' MOTION FOR AND

OPPOSITION TO SUMMARY JUDGMENT

| | |
|---|---|
| **Exhibit 1** | Texas Code of Criminal Procedure § 45.046 |
| **Exhibit 2** | Spreadsheet of Individuals Committed to Jail for Non-Payment of Fines |
| **Exhibit 3** | Deposition of Bertha Garza |
| **Exhibit 4** | Defendants' Supplemental Answers to Interrogatories |
| **Exhibit 5** | The Monitor - *School gym doubles as juvenile courtroom* |
| **Exhibit 6** | Deposition of Roberto Leal |
| **Exhibit 7** | Defendants' Response to Plaintiffs' Requests for Admissions |
| **Exhibit 8** | Activity Report for Justice Courts - Hidalgo Precinct 4 Place 2 |
| **Exhibit 9** | Deposition of Guadalupe Trevino Jr. |
| **Exhibit 10** | Transcript of De Luna Arraignment |
| **Exhibit 11** | Explanation and Waiver of Rights for De Luna and Diaz |
| **Exhibit 12** | Francisco's School Tickets |
| **Exhibit 13** | Orders of Justice Court Transferring Caseof De Luna to Juvenile Court |
| **Exhibit 14** | Palacios' First Mot. For New Trial |
| **Exhibit 15** | Affidavit of Elsa De Luna |
| **Exhibit 16** | Sheriff's Dept. Indigency Forms for De Luna and Diaz |
| **Exhibit 17** | Videos of De Luna and Diaz Arraignments |
| **Exhibit 18** | Class 'C' Commitment Orders |
| **Exhibit 19** | Edinburg CISD Warning to Elizabeth Diaz  dated November 29, 2006 |
| **Exhibit 20** | Elizabeth's Truancy Court Records |
| **Exhibit 21** | Affidavit of Adelita Hernandez |
| **Exhibit 22** | Elizabeth Diaz Arraignment Transcript |
| **Exhibit 23** | Expert Report(s) and Disclosure of Dr. Thorne |
| **Exhibit 24** | JP Fine List |
| **Exhibit 25** | Supplemental Response to Request for Production |
| **Exhibit 26** | Complaint against Judge Mary Alice Palacios from Tony Castillo Jr |
| **Exhibit 27** | Return to Sender Envelope |
| **Exhibit 28** | Deposition of Elizabeth Diaz, pp. 162-165 |
| **Exhibit 29** | Notices of Continuing Obligation to Appear |
| **Exhibit 30** | Educational Record of Francisco De Luna |
| | |